UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

       INTERSTATE COMMODITIES INC.,           Case No. 20-11139
                            Chapter 11
                  Debtor.

_____

       OFFICIAL COMMITTEE OF UNSECURED
       CREDITORS,
                  Plaintiff,

          v.                                Adv. No. 22-90010

       GARY C. OBERTING AND U.S. TRUST
       COMPANY OF DELAWARE AS TRUSTEE
       FOR THE GCO 2012 LEGACY TRUST,
                  Defendants.

_____

       OFFICIAL COMMITTEE OF UNSECURED
       CREDITORS,
                  Plaintiff,

          v.                                Adv. No. 22-90011

       GREGORY F. OBERTING AND
       WILMINGTON TRUST COMPANY AS
       TRUSTEE FOR THE GFO 2012 LEGACY
       TRUST,
                  Defendants.

_____

       OFFICIAL COMMITTEE OF UNSECURED
       CREDITORS,
                  Plaintiff,

          v.                                Adv. No. 22-90012

       VICTOR A. OBERTING, III AND U.S.
       TRUST COMPANY OF DELAWARE AS
       TRUSTEE FOR THE VICTOR A.
       OBERTING DYNASTY TRUST,
                  Defendants.

_____

1

APPEARANCES:

Paul A. Levine, Esq.
Meghan M. Breen, Esq.
Cassandra M. Gipe, Esq.
Lemery Greisler, LLC
*Attorneys for the Official Committee of Unsecured Creditors*
677 Broadway, 8th Fl.
Albany, NY, 12207

Justin A. Heller, Esq.
Nolan Heller Kauffman LLP
*Attorney for Defendants Gregory F. Oberting and Wilmington Trust Company as Trustee for the*
*GFO 2012 Legacy Trust*
80 State Street, 11th Fl.
Albany, NY 12207

John A. Mueller, Esq.
Lippes Mathias LLP
*Attorney for Defendants Gary C. Oberting and U.S. Trust Company of Delaware as Trustee for*
*the GCO 2012 Legacy Trust*
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202

Melissa Subjeck, Esq.
James C. Thoman, Esq.
Hodgson Russ LLP
*Attorneys for Defendant Wilmington Trust Company as Trustee for the GFO 2012 Legacy Trust*
140 Pearl Street, Suite 100
Buffalo, NY 14202

Christian H. Dribusch, Esq.
Dribusch Law Firm
*Attorney for Defendants Victor A. Oberting and U.S. Trust Company as Trustee for the Victor A.*
*Oberting Dynasty Trust*
187 Wolf Road, Suite 300-20
Albany, NY 12205

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM DECISION AND ORDER

Currently before the Court are four motions to dismiss ("Motion(s) to Dismiss") filed by Gary C. Oberting ("Gary"), Gregory F. Oberting ("Gregory") and Victor A. Oberting, III ("Victor") (collectively, the "Obertings") and their respective trusts (collectively, the "Defendants").[1] The three adversary proceedings (Adv. P. Nos. 22-90010, 22-90011 & 22-90012) (the "AP(s)") were commenced by the Official Committee of Unsecured Creditors (the "Committee") of Interstate Commodities, Inc. (the "Debtor").  Additionally, before the Court are three motions filed by the Committee seeking to amend each of the adversary complaints ("Motion(s) to Amend"). The Court has jurisdiction via 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b).[2]

## FACTS

The Debtor filed a Chapter 11 voluntary petition on August 26, 2020, and on August 5, 2021, the Debtor's Chapter 11 plan was confirmed. (ECF Nos. 1 & 253).[3] On October 26, 2021, the Committee filed a "Motion For Order Granting Rule 2004 Examination Against Certain Non-Debtors" seeking production of the unredacted federal and state personal tax returns of the Obertings, as well as their respective trusts, to explore "whether avoidance causes of action may exist in favor of the estate . . . ." (ECF No. 288). The Court granted the discovery request on May 24, 2022. (ECF No. 385). After completing its Rule 2004 discovery, the Committee initiated the

---

[1] The motions were filed by: (i) Gary and U.S. Trust Company of Delaware as Trustee for the GCO 2012 Legacy Trust ("Gary's Trust"); (ii) Gregory; (iii) Wilmington Trust Company ("Wilmington") as Trustee for the GFO 2012 Legacy Trust ("Gregory's Trust"); and (iv) Victor and U.S. Trust Company of Delaware as Trustee for the Victor A. Oberting Dynasty Trust ("Victor's Trust").

[2] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2023) ("Bankruptcy Code").

[3] Citations to the docket of the main case (No. 20-11139) will be referenced as "(ECF No. #)"; citations to the dockets of the Obertings' individual proceedings (Nos. 22-90010, 22-90011 and 22-90012) will be referenced as "(Gary AP No. #)," "(Gregory AP No. #)" and "(Victor AP No. #)," respectively.

APs on August 15, 2022. The APs allege seven[4] separate causes of action against the

Defendants. (Gary AP No. 1; Victor AP No. 1). The Committee also alleges two[5] additional

causes of action against Gregory and Gregory's Trust. (Gregory AP No. 1).

On September 28, 2022, Gary, Gary's Trust, Gregory, Victor and Victor's Trust filed the

Motions to Dismiss in their respective adversary proceedings for failure to state a claim. (Gary

AP No. 9; Gregory AP No. 14; Victor AP No. 11). On October 4, 2022, Gregory's Trust filed an

independent Motion to Dismiss requesting joinder with Gregory's Motion to Dismiss and

arguing that it is not a proper party to this action. (Gregory AP No. 20 at ¶ 8).

On November 16, 2022, the Committee submitted responses and filed the Motions to

Amend. (Gary AP Nos. 17–18; Gregory AP Nos. 24–25; Victor AP Nos. 19–20). On December

6, 2022, the Defendants filed pleadings supporting their Motions to Dismiss and opposing the

Motions to Amend. (Gary AP No. 25; Gregory AP Nos. 33–34; Victor AP No. 27). On

December 14, 2022, the Committee filed briefs in further support of the Motions to Amend.

(Gary AP No. 26; Gregory AP No. 35; Victor AP No. 28). On December 21, 2022, a hearing on

the Motions to Dismiss and Motions to Amend was held, and the matters became fully

submitted. (Gary AP No. 28; Gregory AP No. 36; Victor AP No. 29).

---

[4] The Committee asserts causes of action for two claims of turnover (one pertaining to the distributions made by
Debtor to the Defendants for tax purposes, and the other pertaining to advances made by the Debtor to the
Defendants), breach of contract, two claims of unjust enrichment (one pertaining to the distributions made by Debtor
to the Defendants for tax purposes, and the other pertaining to the tax refunds received by the Defendants via
utilization of the Debtor's net operating losses), breach of fiduciary duty, and breach of implied covenant of good
faith and fair dealing. (Gary AP No. 1; Gregory AP No. 1; Victor AP No. 1). Notably, not all causes of action
include the trusts as defendants.

[5] The additional two causes of action against Gregory, individually, relate to his executive compensation and allege
a breach of contract and a breach of fiduciary duty. (Gregory AP No. 1 at ¶¶ 147–66).

## I.    Background On the Debtor's Operations.

The Debtor is a family-owned, closely-held corporation established under the laws of the State of New York. (Gary AP No. 1 at ¶ 20; Gregory AP No. 1 at ¶ 21; Victor AP No. 1 at ¶ 20). In 2004 and 2005, the Debtor purchased grain facilities and started a railcar leasing business. (Gary AP No. 1 at ¶ 24; Gregory AP No. 1 at ¶ 25; Victor AP No. 1 at ¶ 24). On January 1, 2005, the Debtor began operating as an S corporation. (Gary AP No. 1 at ¶ 22; Gregory AP No. 1 at ¶ 23; Victor AP No. 1 at ¶ 22); *see generally* 26 U.S.C. § 1361.

Based upon the pleadings, the Defendants amassed significant income from six different revenue streams.[6] The Committee alleges that, from 2014 to 2016, Gary and Gary's Trust received a total of $11,739,907.00, Gregory and Gregory's Trust received a total of $16,699,485.12, and Victor and Victor's Trust received a total of $11,927,014.00.[7]

### a. Salary.

The Obertings' employment agreements entitle them to salaries as officers of the Debtor. (Gary AP No. 1 at ¶ 53; Gregory AP No. 1 at ¶ 53; Victor AP No. 1 at ¶ 53). Each employment agreement was executed on December 20, 2012, and is identical but for the salary amount of each Defendant.[8]

---

[6] The Court notes that a seventh income stream, the Defendants' share of Debtor's profits, does not appear to be included in the complaints. (*see* Gary AP No. 1; Gregory AP No. 1; Victor AP No. 1). While the possible absence of this stream of revenue does not affect the legal analysis provided herein, it could impact the total income received by the Defendants from 2014 to 2016.

[7] These totals were derived from figures and calculations contained in the adversary complaints against the Defendants and subsequent filings received from the parties. Further documentation and evidentiary support provided as these matters progress may affect these figures.

[8] The pertinent section in the Obertings' employment agreements is as follows:

> Salary. Executive shall be paid a reasonable compensation for all services rendered to Company under the terms of this Agreement, including an annual salary that allows Executive to maximize his retirement deferrals to the Company's retirement plans, but in no event less than [to Gary: Two Hundred Seventy Thousand Dollars ($270,000.00); to Gregory: Three Hundred Fifty Thousand Dollars($350,000.00); to Victor: Two Hundred Seventy Thousand Dollars ($270,000.00)], to be

According to the Debtor's 2014, 2015 and 2016 IRS Forms 1125-E, "Compensation of Officers," Gary and Victor, as Vice Presidents, received compensation of $1,724,504.00 ("Gary's Compensation") and $1,640,753.00 ("Victor's Compensation"), respectively. (Gary AP No. 1 at ¶ 60–61; Victor AP No. 1 at ¶ 60–61). Gregory, as Chief Executive Officer, received compensation of $6,346,482.00 ("Gregory's Compensation"). (Gregory AP No. 1 at ¶ 61–62).

### b. Incentive Clause.

The employment agreements also include an incentive clause. Gary and Victor are permitted to receive a discretionary bonus.[9] (Gary AP No. 1 at ¶ 55; Victor AP No. 1 at ¶ 55). Gregory is entitled to a non-discretionary bonus.[10] (Gregory AP No. 1 at ¶ 56).

---

paid in equal installments no less than monthly, and such bonuses as may be determined by the Board of Directors. (Gary AP No. 1, Ex. D at ¶ 4.1; Gregory AP No. 1, Ex. D at ¶ 4.1; Victor AP No. 1, Ex. D at ¶ 4.1).

[9] The pertinent portion of the compensation paragraph in Gary and Victor's employment agreements states,

   a.  Executive will have the authority, at his discretion, to distribute among himself and the other members of such trading department(s) he manages, pursuant to the determination of the Board of Directors, up to fifteen percent (15%) of the pre-tax net profits realized from the operations of the said trading department(s). "Net profits" shall be computed in accordance with the methodology adopted by the Board of Directors. (Gary AP No. 1, Ex. D at ¶ 4.3; Victor AP No. 1, Ex. D at ¶ 4.3) (emphasis in originals).

It is unclear why the compensation paragraphs in Gary and Victor's employment agreements do not include language subjecting the incentives to normal payroll deductions as is included in Gregory's agreement, *infra* note 10.

[10] The pertinent portion of the compensation paragraph in Gregory's employment agreement states,

   a.  Executive will receive incentive compensation equal to ten percent (10%) of the Company's pre-tax net income calculated annually based on the Company's audited financial statements for the fiscal year. Such incentive compensation will be payable in a lump sum on March 15th of each year, provided that said audited financial statements have been prepared and delivered to Company with the approving opinion of the Company's auditors. Such payments will be subject to normal payroll deductions for state and federal withholding and social security taxes. (Gregory AP No. 1, Ex. D at ¶ 4.3) (emphasis in original).

**c. Tax Distribution.**

The Obertings are each entitled to receive a distribution from the Debtor to cover their tax obligation resulting from their salary.[11] (Gary AP No. 1 at ¶ 54; Gregory AP No. 1 at ¶ 55; Victor AP No. 1 at ¶ 54).

**d. Tax Dividend.**

The Obertings each receive a dividend from the Debtor to cover their tax obligation resulting from their share of the Debtor's net profits (including the share of the net profits belonging to their individual trusts). (Gary AP No. 1 at ¶ 48 & 51; Gregory AP No. 1 at ¶ 49 & 52; Victor AP No. 1 at ¶ 48 & 51). The Debtor's 2014, 2015 and 2016 IRS Forms 1120S, "Income Tax Return for an S Corporation," reflect Gary received $1,740,765.00 in dividends from 2014 to 2016. (Gary AP No. 1 at ¶ 61). Similarly, Gary's Trust received $5,870,677.00 from 2014 to 2016, combining for a total dividend of $7,611,442.00 ("Gary's Tax Dividends").[12] *Id.*

Gregory received $2,473,719.00 in dividends from 2014 to 2016. (Gregory AP No. 1 at ¶ 62). Similarly, Gregory's Trust received a total of $5,137,725.00 from 2014 to 2016, combining for a total dividend of $7,611,444.00 ("Gregory's Tax Dividends"). *Id.*

---

[11] The pertinent portion of the Obertings' employment agreements reads as follows:

> <u>Distribution to Executive as Shareholder.</u> Provided that Executive remains a Shareholder of the Company, he shall also be entitled to receive an annual distribution of the Company's net profits of an amount not less than the amount needed to satisfy Executive's income tax obligations resulting from the payment of his salary, provided such distribution does not violate applicable lender covenants. (Gary AP No. 1, Ex. D at ¶ 4.2; Gregory AP No. 1, Ex. D at ¶ 4.2; Victor AP No. 1, Ex. D at ¶ 4.2).

[12] The Defendants' respective counsel advised the Committee that there are no separate tax returns for the trusts as the trusts' financial activities were incorporated into the Obertings' individual returns. (Gary AP No. 1 at ¶ 63; Gregory AP No. 1 at ¶ 64; Victor AP No. 1 at ¶ 63).

Victor received $4,186,293.00 in dividends from 2014 to 2016. (Victor AP No. 1 at ¶ 61). Similarly, Victor's Trust received a total of $3,425,149.00 from 2014 to 2016, combining for a total dividend of $7,611,442.00 ("Victor's Tax Dividends"). *Id.*

**e. Tax Refunds.**

The Debtor generated net operating losses ("NOLs") from 2016 to 2018. (Gary AP No. 1 at ¶ 36; Gregory AP No. 1 at ¶ 37; Victor AP No. 1 at ¶ 36). "NOLs are tax deductible and may be carried back and applied against income in previous years (carryback)[] or carried forward and applied against income in subsequent years (carryforward)." *Official Comm. Of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines, Inc.)*, 928 F.2d 565, 567 (2d Cir. 1991) (citing 26 U.S.C. § 172 (1988)). As the Debtor maintains an S-corporation tax status, these NOLs pass through the Debtor directly to its shareholders in proportion to their ownership interest. (Gary AP No. 1 at ¶ 23; Gregory AP No. 1 at ¶ 24; Victor AP No. 1 at ¶ 23). Subsequent to the Debtor generating these NOLs, the Obertings amended their individual tax returns to "carryback" the Debtor's losses and receive personal tax refunds.

Utilizing the 2016, 2017 and 2018 NOLs of the Debtor, Gary received personal tax refunds totaling $2,462,122.00[13] ("Gary's Tax Refunds"). (Gary AP No. 1 at ¶ 71). Likewise, Gregory received personal tax refunds totaling $2,665,819.00[14] ("Gregory's Tax Refunds") and

---

[13] On April 4, 2017, Gary applied the 2016 NOL of $4,731,554.00 to his amended individual 2014 tax return to receive a combined federal and state refund of $2,262,167.00. On June 30, 2018, Gary applied the 2017 NOL of $2,545,011.00 to his amended individual 2015 tax return to receive a combined federal and state refund of $141,794.00. On November 10, 2021, Gary applied the 2018 NOL of $142,592.00 to his amended individual 2013 tax return to receive a combined federal and state refund of $58,161.00.

[14] On April 4, 2017, Gregory applied the 2016 NOL of $3,528,561.00 to his amended individual 2014 tax return to receive a combined federal and state refund of $1,751,099.00. On June 22, 2018, Gregory applied the 2017 NOL of $3,315,409.00 to his amended individual 2015 tax return to receive a combined federal and state refund of $914,720.00.

Victor received personal tax refunds totaling $2,365,026.00[15] ("Victor's Tax Refunds").
(Gregory AP No. 1 at ¶ 72; Victor AP No. 1 at ¶ 71).

### f. Individual Advances.

The Debtor made advances to the Obertings on several occasions. (Gary AP No. 1 at ¶ 44; Gregory AP No. 1 at ¶ 45; Victor AP No. 1 at ¶ 46).[16] It is unclear if these advances were made for a business or personal purpose. Additionally, it is uncertain if any written agreement exists which may provide the terms for these advances. Rather, it seems the advances were made and repaid at the Obertings' discretion.[17] (Gary AP No. 1, Ex. A; Gregory AP No. 1, Ex. A; Victor AP No. 1, Ex. A).

As of the date of filing, Gary had an unpaid balance of $7,494.02 ("Gary's Advance Balance"), Gregory had an unpaid balance of $11,572.00 (Gregory's Advance Balance"), and Victor had an unpaid balance of $13,200.00 ("Victor's Advance Balance").[18] *Id.*

### II.    The Adversary Complaints.

The Committee's preliminary statements in each complaint aver, "[a]s [] officer[s], director[s] and shareholder[s] of the Debtor, [the Obertings], . . .  breached not only contractual obligations but also fiduciary duties to the Debtor and its creditors by taking monies which

---

[15] On April 4, 2017, Victor applied the 2016 NOL of $4,848,864.00 to his amended individual tax return to receive a combined federal and state refund of $2,267,182.00. On June 30, 2018, Victor applied the 2017 NOL of $2,458,156.00 to his amended individual 2015 tax return to receive a combined federal and state refund of $97,844.00.

[16] For purposes of determining the income derived from the advancement of monies by the Debtor to the Defendants, the Court reviewed the outstanding balance of each Defendant as of December 31, 2016. (Gary AP No. 1 at Exhibit A; Gregory AP No. 1 at Exhibit A; Victor AP No. 1 at Exhibit A)

[17] The loan reconciliations for the Obertings reflect sporadic, lump-sum repayments being made in full and in part, sometimes with only a month passing between the advance and repayment and other times years passing. (Gary AP No. 1, Ex. A; Gregory AP No. 1, Ex. A; Victor AP No. 1, Ex. A).

[18] From 2014 to 2016, Gary had an unpaid balance of $0.00 (Gary AP No. 1, Ex. A), Gregory had an unpaid balance of $376,533.12 (Gregory AP No. 1, Ex. A) and Victor had an unpaid balance of $0.00 (Victor AP No. 1, Ex. A).

should and could have been used for the benefit of the Debtor and its creditors." (Gary AP No. 1
at ¶ 9; Gregory AP No. 1 at ¶ 9; Victor AP No. 1 at ¶ 9).

The Committee further asserts, "[The Obertings] and [Gary's Trust, Gregory's Trust and
Victor's Trust][19] also received substantial distributions (above and beyond [their] compensation)
[for Gary and Victor in 2014 through 2016 and for Gregory in 2014 and 2015] in excess of
[their] personal tax liability." (Gary AP No. 1 at ¶ 17; Gregory AP No. 1 at ¶ 17; Victor AP No.
1 at ¶ 17). The Committee posits, "These excess distributions . . . must be returned to the
Debtor's estate as property of the estate and as a breach of contract of the Shareholders'
Agreement." (Gary AP No. 1 at ¶ 18; Gregory AP No. 1 at ¶ 18; Victor AP No. 1 at ¶ 18).

The Committee continues:

> Most egregiously, when the Debtor was in dire financial trouble and reporting
> operating losses on its tax returns in 2016, 2017, and 2018 [the Obertings] seized
> upon this misfortune to amend [their] previously filed 2013, 2014 and 2015
> personal tax returns to apply the net operating losses related to the Debtor to obtain
> substantial refunds of taxes that [they] previously paid with monies provided by the
> Debtor.

(Gary AP No. 1 at ¶ 12; Gregory AP No. 1 at ¶ 12; Victor AP No. 1 at ¶ 12). Next, the
Committee alleges, "[The Obertings] additionally borrowed certain funds from the Debtor and
never repaid [them]. These funds are property of the Debtor's estate and must be repaid." (Gary
AP No. 1 at ¶ 16; Gregory AP No. 1 at ¶ 16, Victor AP No. 1 at ¶ 16).

Finally, specific to only Gregory as the Chief Executive Officer, the Committee contends,
"[Gregory's Compensation] was excessive and well above the replacement value for an

---

[19] The Court notes a typographical error contained within the adversary complaints which each refer to a "CFO
Trust" instead of the defendant trusts' given definition of "GCO Trust," "GFO Trust" and "VAO Trust." (Gary AP
No. 1 at ¶¶ 8 & 17; Gregory AP No. 1 at ¶¶ 8 & 17; Victor AP No. 1 at ¶¶ 8 & 17).

executive in his field and, upon information and belief, exceeded the compensation allowed to [Gregory] under his Employment Agreement." (Gregory AP No. 1 at ¶ 19).

## ARGUMENTS

### I.    The Motions to Dismiss.

In the Motions to Dismiss, the Defendants assert, "the Complaint[s] [do] not allege that the Debtor was insolvent at the times relevant to its claims, and the Committee is still unable to put forth a viable legal theory that could support any of its claims . . . ." (Gary AP No. 9 at 1; Gregory AP No. 14 at 1–2; Victor AP No. 11 at 1). The Defendants continue, "[i]nstead, the Committee has cobbled together flimsy claims each of which fails to state a cause of action, and all are subject to dismissal under [Federal Rule of Civil Procedure ("FRCP")] 12(b)(6)." (Gary AP No. 9 at 1–2; Gregory AP No. 14 at 2; Victor AP No. 11 at 1–2). In terms of the fourth cause of action, the Defendants state that the voluntary payment doctrine bars recovery since the distributions were voluntarily made by the Debtor absent any fraud or mistake. (Gary AP No. 9 at 14; Gregory AP No. 14 at 14; Victor AP No. 11 at 14). Regarding the ninth cause of action, Gregory also asserts the voluntary payment doctrine as a defense. (Gregory AP No. 14 at 23).

Wilmington offers an independent argument that it is not a proper party to this action. (Gregory AP No. 24 at 24). The Committee disagrees, providing relevant New York case law and stating that, "Wilmington Trust Company, in its capacity as Trustee for [Gregory's Trust] is properly named in this action." *Id.* (citations omitted).

The Committee maintains that the Defendants "are throwing any and every argument possible at the Court in an effort to stop the Committee from inquiring into substantial payment[s] and transfers made to [the Obertings] and seeking recoveries for the benefit of creditors." (Gary AP No. 17 at 1; Gregory AP No. 24 at 1; Victor AP No. 19 at 1).

## II.    The Motions to Amend.

The Committee seeks to amend its complaints. First, it "seeks leave to amend the complaint[s] to add and further elaborate on certain facts." (Gary AP No. 18 at ¶ 12; Gregory AP No. 25 at ¶ 13; Victor AP No. 20 at ¶ 12). Second, the Committee seeks to remove its third cause of action for turnover. *Id.* Third, it seeks "to include the assertion that the loan or accounts receivable owed by Defendant[s] are undisputed property of the estate . . . and that [the Obertings] [are] unconditionally liable to repay the debt to the Debtor." (Gary AP No. 18 at ¶ 13; Gregory AP No. 25 at ¶ 14; Victor AP No. 20 at ¶ 13). Fourth, it seeks "to include . . . the allegation that [the] Oberting[s] took distributions from the Debtor without a majority vote of the Board of Directors, without following any corporate formalities, and based on the unilateral and self-serving decision of [the Obertings]." (Gary AP No. 18 at ¶ 14; Gregory AP No. 25 at ¶ 15; Victor AP No. 20 at ¶ 14). And fifth, the Committee seeks "to delete any reference to harm to the creditors in its sixth and ninth causes of action." (Gary AP No. 18 at ¶ 15; Gregory AP No. 25 at ¶ 16; Victor AP No. 20 at ¶ 15).

The Committee states, ". . . the Defendants will not be prejudiced as this case is still in its infancy, no discovery has been completed, and no new claims for relief are asserted in the Proposed Amended Complaint." (Gary AP No. 18 at ¶ 20; Gregory AP No. 25 at ¶ 21; Victor AP No. 20 at ¶ 20). It continues, ". . . there is no significant shift in theories of recovery from the Original Complaint, and the new factual allegations only further support the existing causes of actions and cannot surprise the Defendants." (Gary AP No. 18 at ¶ 21; Gregory AP No. 25 at ¶ 22; Victor AP No. 20 at ¶ 21). The Committee concludes, ". . . these additions will not be futile, as the additional facts only strengthen the Committee's causes of action and will survive any

subsequent motion to dismiss." (Gary AP No. 18 at ¶ 22; Gregory AP No. 25 at ¶ 23; Victor AP No. 20 at ¶ 22).

The Defendants[20] state, ". . . the Committee resorts to unfounded accusation and inuendo, and speculative and conclusory allegations . . . [T]hese efforts fall flat." (Gary AP No. 25 at 2; Gregory AP No. 33 at 2; Victor AP No. 27 at 2). They continue, "[a]ll of the Committee's claims are subject to dismissal under FRCP 12(b)(6), and its Amended Complaint does not cure these deficiencies." (Gary AP No. 25 at 2; Gregory AP No. 33 at 2; Victor AP No. 27 at 2).

The Defendants assert, "[t]he proposed Amended Complaint adds new allegations that these same distributions were prohibited by [the Obertings'] Employment Agreement[s] . . . ." (Gary AP No. 25 at 10; Gregory AP No. 33 at 10; Victor AP No. 27 at 10).

The Defendants conclude, "[t]hese allegations fall far short of providing sufficient factual allegations to state a plausible claim." (Gary AP No. 25 at 10; Gregory AP No. 33 at 10; Victor AP No. 27 at 10).

The Committee responds, "[it] has stated more than enough facts in its Complaint and proposed Amended Complaint to state claims for relief that are plausible on their face which is all that is needed to defeat a pre-answer motion to dismiss." (Gary AP No. 26 at 1; Gregory AP No. 35 at 1; Victor AP No. 28 at 1).

---

[20] Wilmington Trust Company as Trustee for Gregory's Trust filed a joinder to Gregory's and Gregory's Trust's replies in further support of the Motions to Dismiss and in opposition to the Motions to Amend indicating, "In the interest of judicial economy, Wilmington will not repeat and restate the arguments advanced by the Trust and Oberting. Wilmington joins and adopts all relevant arguments and authorities, as if fully stated herein . . . ." (Gregory AP No. 34 at 2).

# DISCUSSION

## I.      Legal Background.

### a.  Motions to Dismiss.

Rule 7012(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule(s)")

incorporates FRCP 12(b)(6) and permits a bankruptcy court to dismiss an adversary proceeding

if a plaintiff's complaint fails to state a claim upon which relief can be granted. Fed. R. Bankr. P.

7012(b); Fed. R. Civ. P. 12(b)(6). "The question in a Rule 12 motion to dismiss is 'not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims.'" *Pereira v. Frenkel Benefits, LLC (In re Moyer Grp., Inc.)*, 586 B.R. 401, 407

(Bankr. S.D.N.Y. 2018) (quoting *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 320

(S.D.N.Y. 2015) (citation omitted)). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "A claim is plausible 'when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

*Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

When determining plausibility, "courts must consider the complaint in its entirety, as well

as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Importantly, "[t]he pleadings must create the possibility of a right to relief that is more than

speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)

(citation omitted).

### b.  Motions to Amend.

Pursuant to FRCP 15(a)(2), made applicable by Bankruptcy Rule 7015, "a party may

amend its pleading only with the opposing party's written consent or the court's leave [and] [t]he

court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to

grant or deny a motion to amend rests in "the sound judicial discretion of the trial court." *See

Adelphia Recovery Trust v. FPL Group, Inc. (In re Adelphia Commc'ns Corp.)*, 452 B.R. 484,

489 (Bankr. S.D.N.Y. 2011) (quoting *Evans v. Syracuse City School District*, 704 F.2d 44, 47

(2d Cir. 1983)).

Denial of a motion to amend may be based upon ". . . undue delay, bad faith or dilatory

motive on the part of the movant . . . *undue prejudice* to the opposing party by virtue of

allowance of the amendment, futility of amendment, etc. . . . ." *Foman v. Davis*, 371 U.S. 178,

182 (1962) (emphasis added). Based upon the pleadings, it appears that futility and undue

prejudice are the applicable elements for the analysis of the Motions to Amend. Therefore, the

Court will limit its analysis to these factors.

In determining whether a proposed amendment is futile, the Court must decide whether

the "proposed amendments would fail to cure prior deficiencies or to state a claim under Rule

12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns,

Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d

42, 50 (2d Cir. 1991)).

To determine whether there is "undue prejudice," the Court "generally consider[s]

whether the assertion of the new claim or defense would '(i) require the opponent to expend

significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay

the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another

jurisdiction.'" *Houston Pipeline Co. LP v. Enron Corp. (In re Enron Corp.)*, 367 B.R. 373, 380

(Bankr. S.D.N.Y. 2007) (quoting *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275,

284 (2d Cir. 2000) (citation omitted)).

Additionally, when a proposed amendment is sought in the face of a pending motion to

dismiss, "a court 'has a variety of ways in which it may deal with the pending motion to dismiss,

from denying the motion as moot to considering the merits of the motion in light of the amended

complaint.'" *Conforti*, 201 F. Supp. 3d at 291 (quoting *Hamzik v. Office for People with

Developmental Disabilities*, 859 F. Supp. 2d 265, 273–74 (N.D.N.Y. 2012) (citations omitted)).

## II.     The Advances.

### a.  Motions to Dismiss.

In its first cause of action in each complaint, the Committee seeks, pursuant to §§ 541–

42, the turnover of monies plus interest which were advanced by the Debtor to the Obertings

prior to the filing of the bankruptcy petition. Section 542, entitled "Turnover of property to the

estate," states in relevant part that, ". . . an entity that owes a debt that is property of the estate

and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the

order of, the trustee . . . ." 11 U.S.C. § 542(b). The Committee bolsters its first cause of action by

asserting that the Obertings' Advance Balances are property of the estate. This determination

hinges on whether the alleged debts are "matured, payable on demand, or payable on order." *Id.*

This remains an open question of fact.

Next, the Obertings' argument that these claims fail because the Committee has not

alleged Advance Balances are undisputed property of the estate is not persuasive. The Court's

"judicial experience and common sense," *Iqbal*, 556 U.S. at 679, lead it to believe that the

advances have been consistently treated as loans by the Debtor, Gary, Gregory and Victor. The

Obertings' bare assertion that these alleged loans are not property of the estate is insufficient to persuade the Court absent evidentiary support. *See In re Willington Convalescent Home, Inc.*, 850 F.2d 50, 52 n.2 (2d Cir. 1988); *In re Nat'l Enterprises, Inc.*, 128 B.R. 956, 959 (E.D. Va. 1991) ("[F]or an action to be a turnover proceeding, it is not relevant that the defendant disputes the existence of the debt . . . .").

Taking the allegations regarding the first cause of action in each of the complaints as true, *Iqbal*, 556 U.S. at 678, the Court finds the Committee has stated a plausible claim for turnover.

### b. Motions to Amend.

The Obertings' assertion that disputed debts or liquidated contract disputes cannot be recovered under § 542(b) falls flat as the Committee's proposed amendments to the first cause of action allege the Advance Balances are "accounts and / or loan receivables and [are] undisputed property of the Debtor's estate," that the Obertings are "unconditionally liable" to repay these borrowed funds and these debts have matured and are presently payable. (Gary AP No. 18, Ex. 1 at ¶¶ 16, 47, 87–89; Gregory AP No. 25, Ex. 1 at ¶¶ 16, 48, 88–91; Victor AP No. 20, Ex. 1 at ¶¶ 16, 47, 87–89).[21]

At this pre-answer stage, the Defendants are not prejudiced by the proposed amendments as they do not increase the likelihood of expenditure of additional resources by them or cause any identifiable delay to the resolution of the matter. Accordingly, the Motions to Amend are granted as to the first cause of action in each complaint.

---

[21] The proposed amended complaint specific to Gregory contains a scrivener's error resulting in a blank paragraph 89. (Gregory AP No. 25, Ex. 1).

### III.     The Distributions.

### a.  Motions to Dismiss.

The Committee's second, third and fourth causes of action in each complaint allege damages to the Debtor's estate in the amount of $2,580,371.00 against Gary and Gary's Trust, $1,142,087.00 against Gregory and Gregory's Trust, and $2,683,525.00 against Victor and Victor's Trust under theories of breach of contract, turnover and unjust enrichment, respectively.[22] The Motions to Amend seek to withdraw the third cause of action in each complaint. (Gary AP No. 18 at ¶ 12; Gregory AP No. 25 at ¶ 13; Victor AP No. 20 at ¶ 12). Therefore, the Court will not address the third cause of action in its analysis.

These alleged damages to the Debtor's estate are the amount of Gary's Tax Dividends, Gregory's Tax Dividends and Victor's Tax Dividends which exceed the actual amount of taxes paid by the Defendants from 2013 to 2015.[23]  Importantly, these purported damages are distinct from the Defendants' utilization of the NOLs when later amending their personal tax returns.[24]

Both the second and forth causes of action rely on paragraph 20(d) of the Debtor's Shareholders' Agreement.[25] The Committee asserts that, if the Debtor's pass-through tax status

---

[22] The Court notes that there were miscalculations in the Committee's complaint regarding distributions received by Gary. (Gary AP No. 1 at ¶ 66). Based on the values provided by the Committee, the total excess distribution received by Gary and Gary's Trust is $2,580,371.00, not $2,580,380.00. Id. The Court notes similar miscalculations in the same chart in the Committee's Complaint against Victor. (Victor AP No. 1 at ¶ 66). However, these miscalculations do not change the total excess distribution received by Victor and Victor's Trust. There were no miscalculations in the same chart in the Committee's Complaint against Gregory. (Gregory AP No. 1 at ¶ 67).

[23] The 2014 dividend was issued to cover taxes caused by the Debtor's 2013 net profits, the 2015 dividend was issued to cover taxes caused by the Debtor's 2014 net profits, and the 2016 dividend was issued to cover taxes caused by the Debtor's 2015 net profits. (Gary AP No. 1 at ¶ 66; Gregory AP No. 1 at ¶ 67; Victor AP No. 1 at ¶ 66). Additionally, Gregory's complaint only alleges damages from 2014 to 2015 based upon the taxes paid by Gregory in 2013 and 2014. (Gregory AP No. 1 at ¶¶ 91 & 107).

[24] As the Defendants' tax returns have not been submitted as evidence at this pre-answer stage, it is unclear to the Court if the Committee utilizes figures representing the Defendants' tax obligation from their original tax returns or their amended tax returns which apply the Debtor's NOLs.

[25] Paragraph 20(d) of the Shareholders' Agreement states: "Distributions are expected but not required to be made to Shareholders in such amounts as necessary to assist each Shareholder to pay the income taxes assessed against the

does not cause the shareholder to pay additional taxes, then the Shareholders Agreement does not authorize the Debtor to issue a tax dividend.

### i.   Breach of Contract.

"Under New York law, the elements of a cause of action for breach of contract are: (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach." *Turner v. Temptu Inc.*, 586 F. App'x 718, 720 (2d Cir. 2014) (citation omitted).

Defendants' argument that the Shareholders' Agreement is clear and unambiguous on its face is irrelevant to the breach of contract claim. At this pre-answer stage, the construction of paragraph 20(d) of the Shareholders' Agreement is an open question.

Next, the Defendants' contention that the Committee failed to identify the breaching party is a *non sequitur* as the claims are being brought against the breaching party: the Defendants. The Committee has identified the following: (1) a contract (i.e., the Shareholders' Agreement), (2) performance by the Debtor in adhering to the Shareholders' Agreement (i.e., distributing tax dividends), (3) a breach by the Defendants (i.e., as directors of the Debtor, calculating the tax dividends to an amount exceeding each shareholders' actual tax obligation) and (4) damages (i.e., the amount of the tax dividends which were excessive).

Taking the allegations regarding the second cause of action in each of the complaints as true, *Iqbal*, 556 U.S. at 678, the Court finds the Committee has stated a plausible claim for breach of contract. Further, questions of fact and law exist at this pre-answer stage, which precludes dismissal of these causes of action. *See Telerep, LLC v. U.S. Int'l Media, LLC*, 903

---

Shareholder as a direct result of the Shareholder's ownership interest in the Company. All such distributions shall be on equal per Share basis, based upon the needs of the Shareholder with the highest per Share distribution. All distributions, for any purpose, shall occur only after a majority vote of all Directors." (Gary AP No. 1, Ex. B; Gregory AP No. 1, Ex. B; Victor AP No. 1, Ex. B).

N.Y.S.2d 14, 16 (N.Y. App. Div. 2010) (holding contractual ambiguity precluded dismissal "pre-answer before the development of a full factual record regarding the parties' intent").

### ii.    Unjust Enrichment.

"Under New York Law, to recover for unjust enrichment, the plaintiff must establish that (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) equity and good conscience require restitution." *Pereira*, 586 B.R. at 408 (citing *Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001)). The complaints allege that the Defendants received tax dividends in an amount that far exceeded any taxes incurred by them as a result of their ownership shares in the Debtor.

The Defendants' argument that the voluntary payment doctrine bars recovery fails. New York's common law "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 790 N.E.2d 1155, 1156 (N.Y. 2003). This argument collapses, especially at the pre-answer stage, because the Committee has asserted that a fraud or mistake has occurred.

The Defendants' representation that New York Civil Practice Law and Rules § 214(3)'s three-year statute of limitations applies to claims for unjust enrichment is not supported by prior decisions in this Circuit. It has been determined that, "[i]n New York, a cause of action for unjust enrichment has a statute of limitations period of six years." *Reyes v. Wells Fargo Bank, N.A. (In re Reyes)*, 627 B.R. 569, 580 (Bankr. S.D.N.Y. 2021) (citing *Yarbro v. Wells Fargo Bank N.A.*, 33 N.Y.S.3d 727, 728 (N.Y. App. Div. 2016) (citing N.Y. C.P.L.R. § 213(1))). Accordingly, the Court determines a six-year statute of limitations applies to the fourth cause of action in each of the APs.

The Committee has alleged that (i) the Defendants are enriched by receipt of the excess distributions, (ii) the enrichment occurred to the detriment of the Debtor, and (iii) it is against equity and good conscious to deny restitution. Taking all allegations in the complaints as true, *Iqbal*, 556 U.S. at 678, the Committee has properly alleged a plausible claim for unjust enrichment.

### b. Motions to Amend.

#### i. Breach of Contract.

The Defendants' contention that the Committee's misquoting of paragraph 20(d) of the Shareholders' Agreement is fatal to a breach of contract claim is unfounded. The Committee expressly acknowledges the Employment Agreements provide for additional distributions to be made for other purposes. Additionally, the Committee has acknowledged this misquoting as an unintentional, scriveners' error and has submitted the Shareholders' Agreement in its exhibits unaltered with the correct version of said paragraph. (Gary AP No. 26 at 5; Gregory AP No. 35 at 5; Victor AP No. 28 at 5).

Next, the Defendants aver that the Committee's allegation concerning a breach of the Employment Agreements and certain lender covenants lacks sufficient factual allegation to state a plausible claim. The Court finds this argument to be unconvincing at this pre-answer stage. It is unclear if the Obertings' taxes assessed on their salaries were paid with monies aggregated into Gary's Tax Dividends, Gregory's Tax Dividends and Victor's Tax Dividends or if they were paid separately. This question of fact will be clarified through further discovery and pre-trial procedures.

The Defendants' remaining arguments do not overcome FRCP 15(a)(2), which mandates that amendments "should [be] freely give[n] . . . when justice so requires." Fed. R. Civ. P.

15(a)(2). The amendments will not unduly prejudice the Defendants. The new assertions relate directly to the original complaints' allegations regarding the breach of contract claims and the monies paid to cover the Defendants' taxes. Any additional discovery necessary to address the new assertions regarding the Employment Agreements and lenders covenants will be identified at the outset before any discovery has taken place in the APs. Thus, the Court grants the Committee's proposed amendments which relate to the second cause of action in each of the complaints.

ii.     **Turnover.**

The Committee's request to remove its third cause of action seeking turnover in each of the APs is granted. As the Defendants' have not yet filed an answer, they will not be prejudiced.

iii.    **Unjust Enrichment.**

The Defendants' arguments against the Motions to Amend the fourth cause of action are in large part a restatement of the arguments against the original complaint. A review of the proposed amendments reflects the only new factual allegation relating to the unjust enrichment claim is that the tax distributions were made without a majority vote of the Board of Directors and without following any corporate formalities. The Court does not find, and the Defendants do not argue any undue prejudice being created by allowing the amendment. Accordingly, the Court shall allow the Committee to amend the fourth cause of action in each of the APs to reflect the related proposed amendments.

### IV.     The Tax Refunds.

#### a.  Motions to Dismiss.

The Committee's fifth, sixth and seventh causes of action in each of the complaints relate to the Obertings' utilization of the Debtor's NOLs to obtain and retain Gary's Tax Refunds, Gregory's Tax Refunds and Victor's Tax Refunds.

The Committee puts forth the argument that "[t]he monies which resulted in tax refunds . . . were originally paid from distributions made by the Debtor . . . ." (Gary AP No. 1 at ¶ 118; Gregory AP No. 1 at ¶ 119; Victor AP No. 1 at ¶ 118).  This, however, conflates the Tax Dividends and Tax Refunds when they are, in fact, two distinct revenue streams.[26] These refunds are comprised of funds originating with the IRS and issued to the Defendants pursuant to the Internal Revenue Code. 26 U.S.C. § 1366(a)(1). At no point does the Debtor have an ownership interest in these funds. In contrast, the Tax Dividends originated with the Debtor and are therefore an appropriate subject matter for claims such as the ones put forth by the Committee in the second, third, and fourth causes of action.

As previously noted, the Debtor's NOLs "are tax deductible and may be carried back and applied against income in previous years (carryback)[] or carried forward and applied against income in subsequent years (carryforward)." *In re Prudential Lines, Inc.*, 928 F.2d at 567 (citing 26 U.S.C. § 172 (1988)). In a standard corporation, any NOL carryback or carryforward is considered "property of the estate of the loss corporation that generated them." *Nisselson v.*

---

[26] There is a great deal of confusion in the Committee's complaints stemming from the difference between the tax dividends and the tax refunds. It is true that the Debtor provided funds—in the form of the tax dividends—to the Defendants for purposes of paying their tax obligations. However, one of the key characteristics of money is fungibility. Once those dividends were given to the Defendants, they became intermingled with the Defendants' funds. Absent extraordinary circumstances not pled by any party, it cannot be said that those specific funds were used to pay the taxes as if the Debtor issued the checks directly to the IRS. *See In re Forman Enters.*, 281 B.R. 600, 609 (Bankr. W.D. Pa. 2002) (stating that it is a "*non sequitur*" to conclude that an S corporation providing a dividend to its shareholders to cover their pass-through tax obligation is the same as the corporation paying the tax itself).

*Drew Indus. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) (citing *In re Prudential Lines, Inc.*, 928 F.2d at 571–73).

However, the tax treatment of NOLs in an S corporation is different since all profits and losses of the business are passed through to the individual shareholders based on their *pro rata* share of the corporation. 26 U.S.C. § 1366(a)(1). As a result, it is the shareholders—and not the corporation itself—that have a right to use the NOL of the corporation to reduce past or future tax liabilities.

It is undisputed that the Debtor has been operating as an S corporation since January 1, 2005. The Defendants use of the NOLs and subsequent retention of the tax refunds was in accordance with the corporate structure of the Debtor. *See* 26 U.S.C. § 1366(a)(1). By amending the Internal Revenue Code, "Congress invited shareholders of small business corporations to avail themselves of the tax advantage derived from using their corporation's net operating losses as deductions on their personal income tax returns." *Hauptman v. Director of Internal Revenue*, 309 F.2d 62, 65 (2d Cir. 1962).

### i.    Unjust Enrichment.

As stated *supra*, the Committee "must establish that (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) equity and good conscience require restitution." *Pereira*, 586 B.R. at 408 (citations omitted).

The second prong of the analysis laid out in *Pereira* is unmet in this case because the Defendants' use of the NOLs to receive tax refunds from the IRS was not at the expense of the Debtor, and consequently not at the expense of the Plaintiff. As previously indicated, in an S corporation, the NOLs were never available to the Debtor, but rather were always the property of the Defendants as shareholders of the Debtor. Because the Debtor could not utilize the NOLs, the

Defendants' utilization of the same could not be considered to have come at the expense of the Debtor.

> Although it is disconcerting that the [creditor] . . . will not be permitted to utilize the NOL and the tax refund to further reduce its claim while debtor's shareholders will reap the benefit of the tax refunds, this, standing alone does not suffice to incite equity to take measures it deems necessary to rectify this inequity.

*In re Forman Enters.*, 281 B.R. at 608–09. For the reasons stated, the Committee has not alleged a claim for unjust enrichment which is plausible. *See Biro*, 807 F.3d at 544 (quoting *Iqbal*, 556 U.S. at 678) ("A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").[27]

Accordingly, for all the reasons stated, the fifth cause of action in each of the complaints is dismissed for failure to state a claim upon which relief may be granted.

### ii.    Breach of Fiduciary Duty.

In New York, "[t]he elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Varveris v. Zacharakos*, 973 N.Y.S.2d 774, 775 (N.Y. App. Div. 2013) (citations omitted). Under New York law, an insider-shareholder of a corporation generally has both a duty of care and a duty of loyalty. *See* N.Y. C.L.S. Bus. Corp. § 717(a); N.Y. C.L.S. Bus. Corp § 715(h). First, "[t]he duty of care refers to the responsibility of a corporate fiduciary to exercise, in the performance of his tasks, the care that a reasonably prudent person in a similar position would use under similar circumstances . . . ." *Pereira v. Lin (In re Maxsun Produce Corp.)*, 2020 Bankr. LEXIS 1128, at *21 (Bankr. E.D.N.Y. Apr. 24, 2020). Second, "the duty of loyalty[] derives from the prohibition against self-

---

[27] The Defendants' argument that a three-year statute of limitations applies to unjust enrichment claims has been addressed above and found to be incorrect. However, as the fifth cause of action in each of the APs seeking recovery for unjust enrichment fails to state a plausible claim, the Court will not readdress the statute of limitations argument.

dealing that inheres in the fiduciary relationship." *Id.* There is no doubt that the Defendants have a fiduciary relationship with the Debtor.

However, the Committee has failed to allege any misconduct by the Obertings in utilizing the NOLs. As previously discussed, the Defendants were within their rights as shareholders of an S corporation to carryback the NOLs of the Debtor and secure individual tax refunds. Further, the Defendants were not obligated to provide their refunds to the Debtor. *See also McLear v. McLear*, 40 N.Y.S.2d 432, 436 (N.Y. App. Div. 1943) (determining the director of a closely-held corporation is not required "to advance his personal funds" to the business venture). Since there is no duty or fiduciary task requiring that the Defendants advance funds to the Debtor, their retention of the refunds alone cannot constitute a breach of fiduciary duty.

The Committee fails to allege an addressable harm to the Debtor incurred by the Defendants' use of the NOLs. "To state [a claim for breach of fiduciary duty . . . based upon the use of the debtor's NOLs], the complaint must allege facts showing that the NOLs had value to the debtor." *Nisselson*, 222 B.R. at 425. By operation of the Tax Code, the Debtor's flow-through tax attribute as an S corporation removes the NOLs from the Debtor's benefit and places it into the shareholders'. *See In re Forman Enters.*, 281 B.R. at 608.

Accordingly, for all the reasons stated, the Committee has failed to state a plausible claim for breach of fiduciary duty, and the sixth cause of action in each of the complaints is dismissed for failure to state a claim upon which relief may be granted.[28] S*ee Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted).

---

[28] As the Committee has failed to state a plausible claim for relief in the sixth cause of action in each of the APs for breach of fiduciary duty, the Court will not address whether New York Civil Practice Law and Rules § 214(4)'s three-year statute of limitation applies or New York Civil Practice Law and Rules § 213(7)'s six-year statute of limitation applies.

### iii.    Breach of Implied Covenant of Good Faith.

"The implied covenant of good faith and fair dealing 'is implied in all contracts' and 'embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Shelton v. Sethna*, No. 10 Civ. 4218, 2012 U.S. Dist. LEXIS 42194, at *21 (S.D.N.Y. Mar. 26, 2012) (quoting *Fishoff v. Coty, Inc.*, 634 F.3d 647, 653 (2d Cir. 2011)). However, while "a breach of the implied covenant of good faith and fair dealing can give rise to a claim for breach of contract, [] it cannot give rise to a second, freestanding cause of action." *Id.* at *22 (citing *B. Lewis Prods. v. Angelou*, No. 01 Civ. 0530, 2005 U.S. Dist. LEXIS 9032, at *35 (S.D.N.Y. Apr. 26, 2005)).

The Committee asserts that the retention of Gary's Tax Refunds, Gregory's Tax Refunds and Victor's Tax Refunds caused the Obertings to receive "more than was intended under the Shareholders' Agreement and Employment Agreement[s], to the detriment of the Debtor." (Gary AP No. 1 at ¶ 143; Gregory AP No. 1 at ¶ 143; Victor AP No. 1 at ¶ 142). The Committee's assertion is misguided. It is the Internal Revenue Code—not the Shareholders' Agreement or Employment Agreements—which grants the Defendants the right to the refunds. Absent language in the Shareholders' Agreement to the contrary, the Obertings' retention of the refunds is not to the detriment of the Debtor.

Accordingly, for all the reasons stated, the seventh cause of action in each of the complaints is dismissed for failure to state a claim upon which relief may be granted.

### b.   Motions to Amend.

The proposed amendments requested to be made to the fifth, sixth and seventh causes of action in each of the APs seeks to remove references to the Debtor's estate and the Debtor's creditors and clarify that it was the Debtor itself that was harmed, or to which a duty was owed.

Additionally, a statement is added that the Board of Directors failed to vote on these
distributions. However, the proposed amendments fail to cure the futility of these causes of
action. Hence, the Court declines to allow such proposed amendments as they would not alter the
Committee's failure to state plausible claims. *See Foman*, 371 U.S. at 182.

## V.    Gregory's Executive Compensation.

### a.  Motion to Dismiss.

The Committee's eighth and ninth causes of action, brought against Gregory alone, assert
Gregory's Compensation was excessive.

### i.    Breach of Contract.

As previously stated, "Under New York law, the elements of a cause of action for breach
of contract are: (1) the existence of a contract, (2) performance of the contract by one party, (3)
breach by the other party, and (4) damages suffered as a result of the breach." *Turner*, 586 F.
App'x at 720 (citation omitted).

The details of Gregory's compensation are contained in his Employment Agreement
Section 4.1, which entitles Gregory to "reasonable compensation for all services rendered to
[Debtor] under the terms of this [a]greement . . . ." (Gregory AP No. 1, Ex. D at § 4.1). Without
having to look further at this pre-answer stage, Gregory's Employment Agreement requires that
his compensation be reasonable. The Committee alleges that the payment of Gregory's
compensation was unreasonable.  (Gregory AP No. 1 at ¶ 155).

Next, Gregory's contention that the voluntary payment doctrine bars recovery is
responded to by the Committee's reiteration that the Debtor's Board of Directors never approved
Gary's Compensation by a majority vote.  Additionally, "a plaintiff is 'not required to
preemptively plead facts refuting the voluntary payment doctrine.'" *Hyper Bicycles, Inc. v.*

28

*Acctel, Ltd.*, No. 22cv1601, 2023 U.S. Dist. LEXIS 33480, at *13 (S.D.N.Y. Feb. 28, 2023)

(denying a motion to dismiss) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009)).

Finally, Gregory's argument that a claim for breach of contract is governed by New York

Civil Practice Law and Rules § 213(2)'s six-year statute of limitations is not challenged by the

Committee. Accordingly, any amount of Gregory's Compensation which was distributed prior to

August 26, 2014, is barred from recovery.

In summary, the Committee has stated in its complaint against Gregory that (i) the

Employment Agreement exists, (ii) the Debtor has employed Gregory throughout the relevant

period, (iii) Gregory breached the Employment Agreement as Gregory's Compensation exceeds

what was permitted and (iv) the Debtor has been damaged by payment of the excessive

compensation.

For all the reasons stated, and taking the allegations regarding the eighth cause of action

against Gregory as true, *Iqbal*, 556 U.S. at 678, the Court finds the Committee has stated a

plausible claim for breach of contract.

### ii. Breach of Fiduciary Duty.

As previously specified, in New York, "[t]he elements of a cause of action to recover

damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2)

misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct."

*Varveris*, 973 N.Y.S.2d at 775 (citations omitted). The Committee has alleged that (i) a fiduciary

relationship exists between the Debtor and Gregory, (ii) Gregory breached his duty in

authorizing and taking excessive compensation for 2014, 2015 and 2016, and (iii) the Debtor was

harmed.

Gregory's first averment that the ninth cause of action against him should be dismissed because no fiduciary duty is owed to creditors where a corporation is not insolvent ignores that the Committee alleges that he breached his duty of loyalty and care to the Debtor as well. While the original complaint identifies the "Debtor's estate was damaged," the Court can reasonably infer the Debtor was harmed at the time of the distributions. *See Biro*, 807 F.3d at 544 (quoting *Iqbal*, 556 U.S. at 678) ("A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Regardless, the Committee seeks to amend this statement which will be addressed below.

Gregory's second averment that a three-year statute of limitation applies here ignores his role as officer, director and shareholder of the Debtor. New York Civil Practice Law and Rules § 213 provides, in relevant part:

> The following actions must be commenced within six years . . . [including] an action by or on behalf of a corporation against a present or former director, officer or stockholder for an accounting, or to procure a judgment on the ground of fraud, or to enforce a liability, penalty or forfeiture, or to recover damages for waste or for injury to property or for an accounting in conjunction therewith.

N.Y. C.P.L.R. § 213(7) (CONSOL. 2023). Notably, this New York statute does not distinguish between claims seeking equitable relief versus monetary relief as Gregory asserts is the dispositive question. Hence, the Court determines a six-year statute of limitations applies here and any amount of Gregory's Compensation which was distributed prior to August 26, 2014, is barred from recovery.

For all the reasons stated, and taking the allegations regarding the ninth cause of action against Gregory as true, *Iqbal*, 556 U.S. at 678, the Court finds the Committee has stated a plausible claim for breach of fiduciary duty.

30

**b.  Motion to Amend.**

Gregory's papers in opposition to the Motion to Amend do not focus on the proposed

amendments to the complaint against him and instead seek to argue the merits of the original

complaint. As the Court has already addressed the Motion to Dismiss and found the Committee

has stated plausible claims against Gregory in its eighth and ninth causes of action, it will not

reiterate its analysis. The Motion to Amend seeks to add a nearly identical paragraph to both the

eighth and ninth causes of action in the complaint. The Committee states, "Upon information and

belief, and contrary to the terms of the Shareholder and Employment Agreement, any

distributions for [bonus compensation or bonuses] and/or tax dividends were made without a

majority vote of the Board of Directors." (Gregory's AP No. 25, Ex. 1 at ¶¶ 158 & 167).

Additionally, the Committee seeks to clarify that the harm occurred to the Debtor, not the

bankruptcy estate or creditors.

There is no undue prejudice created by allowing these amendments and Gregory has not

argued that he would be prejudiced at this preliminary stage of the proceeding. Accordingly, the

Court grants the Committee's motion to amend the eighth and ninth causes of action against

Gregory as reflected in its proposed amended complaint.

### VI.    The Court's Jurisdiction over Wilmington Trust Company.

**a.  Proper Party.**

Wilmington's contention that it is not a proper party to the Gregory AP is not supported

by any cite to authority. Rather, it rests on an assertion that there are no allegations alleging

wrongdoing or breach of Wilmington's duties as trustee and no causes of action or relief sought

against it. (Gregory AP No. 20 at ¶¶ 10–12).

The United States Bankruptcy Court for the Southern District of New York has

determined:

> Under [FRCP] 17(b)(3) of the Federal Rules of Civil Procedure, the law of the state
> where the court is located governs whether the [trust] has the capacity to be sued.
> "Under New York law, an express trust vests in the trustee the legal estate, and the
> trustee is the party with capacity to sue [or be sued] on behalf of the trust."

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 634 B.R. 39, 48 (Bankr. S.D.N.Y.

2021) (quoting *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 10 F.4th 87, 97–

98 (2d Cir. 2021))). As Wilmington is the trustee for Gregory's Trust, which is a 22.5%

shareholder of the Debtor and has received monies pursuant to such ownership share that the

Committee seeks to recover in its second and fourth causes of action, the Court determines

Wilmington is a properly named defendant.

### b.  Authority to Enter Final Orders and Judgments.

Wilmington's Motion to Dismiss further states that, "Wilmington does not consent to the

Bankruptcy Court entering final orders and judgments in this adversary proceeding." (Gregory

AP No. 20 at ¶ 14). Wilmington does not include any factual or legal analysis to support its

position. "Bankruptcy judges may hear and determine all cases under title 11 and all core

proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a)

of this section, and may enter appropriate orders and judgments . . . ." 28 U.S.C. § 157 (b)(1). A

non-exhaustive list of core proceedings is provided in the statute at 28 U.S.C. § 157(b)(2). *See* 28

U.S.C. § 157(b)(2) ("Core proceedings include, *but are not limited to* . . . .) (emphasis added).

"The bankruptcy judge shall determine . . . whether a proceeding is a core proceeding under this

subsection . . . ." 28 U.S.C. § 157(b)(3).

Under 28 U.S.C. § 157(b)(2)(A), "matters concerning the administration of the estate" are considered core proceedings. *See PSINet, Inc. v. Cisco Sys. Capital Corp. (In re PSINet, Inc.)*, 271 B.R. 1, 31 (Bankr. S.D.N.Y. 2001) (stating that § 157(b)(2)(A) can be used, given the careful determination of the bankruptcy judge, to label an adversary proceeding involving a contract action as a core proceeding). This places the second and fourth causes of action under this Court's purview as core proceedings related to the Chapter 11 bankruptcy.

For the reasons stated, the claims brought against Wilmington in its capacity as Trustee of Gregory's Trust are part of this matter's core proceedings, and therefore this Court has the authority to enter final orders and judgments in this AP pursuant to 28 U.S.C. § 157.

## CONCLUSION

The Court finds the Committee has properly alleged sufficient factual matter to state a claim that is plausible on its face with respect to the first, second and fourth causes of action in each of the APs and with respect to the eighth and ninth causes of action against Gregory. However, the Court determines the Committee has failed to allege sufficient factual matter to state a claim that is plausible on its face with respect to the fifth, sixth and seventh causes of action in each of the complaints. Therefore, the Motions to Dismiss are granted with respect to only the fifth, sixth and seventh causes of action in each of the complaints and denied as to all others.

The Court further determines the Committee's proposed amendments to the complaints contained in its Motions to Amend will not prejudice the Defendants. Nevertheless, the Court decides the proposed amendments are futile as to the fifth, sixth and seventh causes of action in

each of the complaints. Hence, the Motions to Amend are granted as to the first, second, third[29]

and fourth causes of action in each of the complaints and the eighth and ninth causes of action

against Gregory but are denied as to all others.


Dated: November 21, 2023
Albany, New York

                         /s/ Robert E. Littlefield, Jr.   
                        Robert E. Littlefield, Jr.
                        United States Bankruptcy Judge

---

[29] The Motions to Amend are granted as to the third cause of action in each of the complaints in so far as it removes it from each complaint.